1:24-mj-3243-RJS

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Bradley Fearn, a Special Agent with the Department of Veterans Affairs, Office of Inspector General, Criminal Investigations Division (VA OIG CID), being first duly sworn, hereby depose and state as follows:

### INTRODUCTION

1. I have been employed as a Special Agent of the VA OIG CID since November 2024. I have worked as a Federal Agent with other Federal agencies since 2008, including the Diplomatic Security Service, the United States Marshal Service, and Health and Human Services Office of Inspector General. During my tenure as a Federal law enforcement officer, I have investigated a range of criminal violations, including white-collar, violent crime, and unlawful flight of fugitives. Since 2008, I have received training and have experience in interviewing and interrogation techniques, arrest procedures, search and seizure, search and arrest warrant applications, and various other investigative techniques.

2. I make this affidavit in support of an application for a criminal complaint and arrest warrant for Adrienne SMITH for a violation of 18 U.S.C. § 875(c), Threatening Interstate Communications.

3. Because this affidavit is submitted for the limited purpose of showing that there is probable cause to believe that Adrienne SMITH has violated 18 U.S.C. § 875(c), it does not contain every fact known in the investigation.

4. Title 18 U.S.C. § 875(c), states, in part, that it is an offense for a person to transmit in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another. The facts in this affidavit come from my

personal observations, my training and experience, and information obtained from other law enforcement officers and witnesses.

## SUMMARY OF INVESTIGATION

5. Adrienne SMITH is a former logistics employee at the Cleveland VA Medical Center that was terminated from her position at the VA on October 27, 2024.

6. On December 3, 2024, VA OIG CID was notified by the Cleveland VA Medical Center (VAMC) Police Department that SMITH made a series of threatening cellular phone calls to a group of VA employees on that same date.

7. VAMC Police reported that SMITH made the calls from her cell phone, 832-439-9007. The cellular phone calls were transmitted via interstate communication which included direct threats to shoot and severely injure several individuals, all of whom are federal employees. These phone calls appear to be in retaliation for the role that SMITH perceived these individuals to play in her termination from the VA.

8. On December 3, 2024, I responded to the VAMC and interviewed several people with knowledge of SMITH and/or the threatening phone calls, listened to recorded phone calls from SMITH, and reviewed other relevant files.

9. My investigation and review of the evidence reveals that SMITH had made the threats to three VA employees: S.G., K.B., and S.H.[1]

10. S.G. is a logistics supply technician. K.B. is an inventory management specialist. S.H. is a logistics supply technician. All three work at the VAMC ELU building in close-by office

---

[1] The true identity of S.G., K.B., and S.H. are known to me but have been redacted to protect their privacy.

space. My interviews with these employees revealed that these three employees regularly ate lunch with SMITH over the past several years.

11. On December 3, 2024, SMITH called S.G. at approximately 1:30pm while S.G., K.B., and S.H. were having lunch together.

12. S.G. answered the phone, and SMITH asked her who was sitting with her. S.G. responded that she was with both K.B. and S.H. SMITH then told S.G. to put the phone on speaker.

13. SMITH then proceeded to tell S.G., K.B., and S.H. she was going to come over there and shoot them. SMITH stated that she doesn't make threats, she makes promises. Recorded portions of the call included "no, no, no, no. I'm not going to kill you, I'm going to shoot you in the motherfu**ing back of your…left ass…"

14. This first cellular phone call lasted approximately five minutes.

15. SMITH then called S.G. a second time, at approximately 1:41pm. During this recorded call, SMITH denied that she was "threatening anyone, I don't do that. I don't threaten anyone." One of the VA employees then asked, "so why did you say it?" SMITH replies "Because I'm telling you what I'm fittin' to do." SMITH further goes on to say, "I'm going to meet you at your car, it might not be today, it might not be tomorrow, it might not be Thursday, it might not be Friday, it might be a month from now, it might be two months from now. What you motherfu**ers did to me…"

16. SMITH was seen by another logistics driver in close vicinity of the VAMC the same day as the threatening phone calls. S.G., K.B., and S.H. all felt very threatened and fearful after this incident. Both K.B. and S.H. had heard SMITH previously speaking about owning a firearm.

17. SMITH is a veteran of the U.S. Army with a tour of duty for the defense of Saudi Arabia and liberation and defense of Kuwait. She received a general discharge under honorable conditions due to misconduct-drug abuse. Based on my knowledge and experience, she received training to use firearms as part of her basic duties in the U.S. Army.

18. Several witnesses stated SMITH has talked about owning a firearm. One witness remembered last year when SMITH was upset, she said "sh*t, if one of these <inaudible> make me look <inaudible>, I got a Glock, I'm gonna shoot all these motherfu**ers." SMITH also has a history of using foul, inappropriate, and threatening language towards others. Several witnesses also said that SMITH has a serious problem with alcohol. Details of these interviews and of this information are presented below.

## DETAILS OF INVESTIGATION

19. On December 3, 2024, K.B. was interviewed at the VAMC. As detailed above, during lunch on December 3, 2024, SMITH called S.G.'s cell phone from SMITH's cell phone number. K.B. recorded this call using her own personal cell phone. K.B. also recorded the other call that SMITH subsequently made to S.G.'s cell phone. Before K.B. began recording during the first phone call, S.G. had put the phone on speaker while K.B., S.G., and S.H. were having lunch.

20. K.B. remembers that before the recording started, SMITH was complaining to the three employees that statements they made during an internal investigation were to blame for her employment being terminated. K.B. said SMITH said she was going to come over there and shoot them. SMITH also said that she doesn't make threats, she makes promises. These statements are what prompted S.G. to ask K.B. to begin recording the phone calls.

21. K.B. provided me with the four video recordings of the phone calls that SMITH made that afternoon, which I reviewed.

22. K.B. said that SMITH mentioned having a gun during previous conversations. K.B. believed that SMITH sounded different than she had before, more serious. K.B. felt threatened by SMITH's phone call. K.B. said SMITH knew where she lived and K.B. felt scared.

23. On December 3, 2024, S.G. was interviewed at her residence. S.G. stated that earlier SMITH was upset with K.B., S.G., and S.H because SMITH believes they were at least partially responsible for SMITH's employment being terminated due to statements they were asked to write regarding an incident between SMITH and her supervisor, R.L.[2]

24. SMITH called S.G. two times on December 3, 2024, with the first call coming at approximately 1:30pm. S.G. said that K.H. recorded those calls except for the beginning of the first call. The first call came while S.G., K.H., and S.H. were having lunch that day. SMITH called S.G.'s cell phone from SMITH's cell phone. Before K.H. began recording, S.G. said that SMITH asked who S.G. was having lunch with. S.G. told SMITH she was at lunch with K.H. and S.H. SMITH then told S.G. to put the phone on speaker. SMITH began cursing out the three of them out over the phone. SMITH said she was still upset with those three, she was mad, pissed off, and questioned why they wrote up statements against SMITH. SMITH then said, "I want you to know, I'm coming up there to shoot you all." SMITH also said she was going to meet "you" at your car. SMITH also said that she doesn't make threats, she makes promises. SMITH continued talking and that's when S.G. signaled to K.H. to get her phone and begin recording the call.

---

[2] The true identity of R.L. is known to me but is redacted herein to protect R.L.'s privacy.

25. S.G. felt threatened during the phone call and was thankful that SMITH had never been to her house. However, S.G. knows it is not that difficult to find out someone's address using public records searches.

26. After the interview concluded, S.G. sent your affiant a screen shot of the call log for SMITH. The log shows that SMITH called S.G. at 1:32 pm for 5min and 35 sec and again at 1:41pm for 4min, 43sec. SMITH was listed in S.G.'s phone as "Adrienne VA Driver" with a phone number of 832-439-9007.

27. On December 4, 2024, S.H. was interviewed at the VAMC. S.H. stated that the phone call SMITH made on December 3, 2024 was not the first time SMITH threatened S.H. on a cell phone call. S.H. stated that SMITH called S.H. on November 25, 2024 complaining that S.H. had written a statement that was part of the reason for SMITH's employment being terminated. SMITH also told S.H. that she was going to meet her at her car during that call. S.H. said that SMITH had been saying that kind of thing for years, but this time SMITH's demeanor seemed different. S.H. took this as a threat. SMITH called from the phone number 832-439-9007. S.H. knows this to be SMITH's cell phone.

28. On December 4, 2024, S.H. was eating lunch with S.G., and K.B. when SMITH called S.G.'s cell phone and S.G. put the phone on speaker. S.H said that SMITH started "ranting and raving" about why they brought the statements against SMITH.  SMITH then went on to say that "I'm feeling some kind of way," to which S.H. responded, "what do you mean?" SMITH responded, "well I'm on my way up there…I'm getting ready to shoot you…I'm not going to kill you, I'm just going to shoot you."  SMITH also said that it was not a threat, but a promise. S.H. said that K.H. eventually began recording this phone call, but all this happened before K.H. started recording.

29. S.H. felt very threatened by these statements and it prompted S.H. to immediately get up and go report the incident to the VAMC Police Department.

30. S.H. reported that SMITH has talked about having a gun in her home. S.H. believes that SMITH probably does own a firearm. S.H. also felt further threatened because SMITH knows where she lives.

31. I reviewed the four recordings provided by K.B. The following is a transcription of some of the relevant statements contained in the recordings:

a. First recording: "You aren't my friends, you aren't my friends at all." "Ms. <S.H.>, I'm so disappointed in you…when I called you I told you." S.H. confronted SMITH on the phone about SMITH saying she was going to come up there and kill them. SMITH responded, "no, no, no, no. I'm not going to kill you, I'm going to shoot you in the motherfu**ing back of your…left ass…"

b. Second recording: Only 5 seconds

c. Third recording: Only 2 seconds

d. Fourth recording: "no, and it was not a good thing what you motherfu**ers did to me." Someone asks SMITH on the call why SMITH threatened to come "up there and shoot us." SMITH responded "I'm not threatening anyone, I don't do that. I don't threaten anyone." The other person says "so why did you say it." SMITH replies "Because I'm telling you what I'm fittin' to do." SMITH further goes to say, "I'm going to meet you at your car, it might not be today, it might not be tomorrow, it might not be Thursday, it might not be Friday, it might be a month from now, it might be two months from now. What you motherfu**ers did

to me, and you, you of all people, you have Gotti (unable to discern), that motherfu**er, because he's a dumba**."

32. On December 3, 2024, logistics supervisor R.L. was interviewed in his office in the VAMC Administrative building. R.L. was SMITH's supervisor. SMITH was a driver at the VAMC and took patients from one part of the hospital to another. R.L. reprimanded SMITH earlier this year due to an incident at Geneva on the Lake. SMITH began confronting one of the other drivers using loud and inappropriate language. That driver's name was E.M.[3] E.M. reported this incident to R.L. This resulted in SMITH being suspended for two weeks. Sometime after SMITH came back from suspension, she went to R.L.'s office and began yelling and cussing at him. One of the supervisors in the office asked all the employees in the vicinity, including S.G., S.H., and K.B., to write a statement about what they observed and/or heard. This event eventually led to her employment being terminated.

33. On December 3, 2024, I interviewed E.M. via telephone. E.M. said SMITH got upset because he was assigned to an event at Geneva on the Lake. E.M. said that on November 28, 29, and December 2 he noticed that SMITH was following him while he was driving one of the VA transports. E.M. said he made a couple of irregular turns to see if it was a mistake, but each time SMITH followed him. SMITH was driving the car he knew to be hers, a late mode, maroon sedan. When E.M. eventually arrived back to the main entrance of the VAMC and pulled into the half-circle, SMITH drove by on the road and looked right at him. E.M. felt threatened by these behaviors.

---

[3] The true identity of E.M. is known to me but redacted herein to protect E.M.'s privacy.

34. Additionally, E.M. said there was a separate incident last year near the 7000 Euclid Ave building. E.M. and SMITH were waiting on a call to come in for service. SMITH was upset about something and E.M. was telling that she really needed to calm down. SMITH said "sh*t, if one of these <inaudible> make me look <inaudible>, I got a Glock, I'm gonna shoot all these motherfu**ers."

35. On December 4, 2024, I reviewed personnel files for SMITH. A personnel action dated October 27, 2024 shows a removal of SMITH for inappropriate conduct. The files include a notice of proposed removal dated September 23, 2024 in which the charge states SMITH said to her supervisor "…I'm going to get you and you're going to make it very easy for me to do…" or words to that effect.

36. Based on all of the above, your Affiant respectfully submits that there is probable cause to believe that Adrienne SMITH has violated 18 U.S.C. § 875(c), Threatening Interstate Communications.

_____
Bradley Fearn
Special Agent, VA OIG CID

Subscribed and sworn to me this __5th__ day of December, 2024, via telephone after submission by reliable electronic means. Fed.R.Crim.P. 4.1 and 41(d)(3).

Reuben J. Sheperd, United States Magistrate Judge